IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:15-CV-00049-RN

**Brenda Lee Goble,**

Plaintiff,

v.

**Carolyn Colvin**, Acting Commissioner of Social Security,

Defendant.

**Memorandum & Order**

Plaintiff Brenda Lee Goble instituted this action on June 4, 2015, to challenge the denial of her application for social security income. Goble claims that Administrative Law Judge Ronald Sweeda erred in his determination by failing to evaluate her impairments under Listing 12.05C; failing to account for her moderate limitations in concentration, persistence, or pace in making the residual functional capacity ("RFC") determination; and by finding that an RFC for a reduced range of medium work was compatible with her previous work. Both Goble and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 25, 29.

After reviewing the parties' arguments, the court has determined that ALJ Sweeda erred in part in his determination. The ALJ appropriately determined that the evidence does not support a finding that Goble meets or equals the criteria of Listing 12.05C or that an RFC for medium work would preclude her previous work. However, ALJ Sweeda did not explain how his RFC determination that limits Goble to simple, routine, repetitive tasks accounts for her moderate limitation in concentration, persistence, or pace. Therefore, the undersigned magistrate judge grants Goble's Motion for Judgment on the Pleadings, denies Colvin's Motion for

Judgment on the Pleadings, and remands this matter to the Commissioner for further consideration.[1]

## I. Background

On December 12, 2011, Goble filed applications for disability benefits and supplemental security income. In both applications, Goble alleged that she lives with a disability that began on November 14, 2011. After her claims were denied at both the initial stage and upon reconsideration, Goble appeared before ALJ Sweeda for a hearing to determine whether she was entitled to benefits. ALJ Sweeda determined Goble was not entitled to benefits because she was not disabled. Tr. at 74–84.

ALJ Sweeda found that Goble had the following severe impairments: obesity, diabetes mellitus, hypertension, depression, and sleep apnea. *Id*. at 76. ALJ Sweeda also found that these impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* ALJ Sweeda then determined that Goble had the RFC to perform medium work with the following limitations: she can occasionally crawl, climb, crouch, and kneel; she can frequently stoop; she can occasionally reach overhead with the left upper extremity; she can have no exposure to unprotected heights or dangerous machinery; and she is limited to simple, routine, repetitive tasks with no direct customer service and not requiring good reading or writing skills. *Id*. at 78. ALJ Sweeda also concluded that Goble was capable of performing her past work as an industrial cleaner. *Id.* at 83. Thus, ALJ Sweeda found that Goble was not disabled. *Id*. at 84.

After unsuccessfully seeking review by the Appeals Council, Goble commenced this action by filing a complaint pursuant to 42 U.S.C. § 405(g) on March 11, 2015. D.E. 5.

[1] The parties have consented to jurisdiction by a United States Magistrate Judge. 28 U.S.C. § 636(c). D.E. 27.

## II. Analysis

### A. Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to a determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales,* 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B. Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing

whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

**C. Medical Background**

Goble has a history of diabetes, hypertension, and depression. Tr. at 344–67. In November 2011, she was hospitalized for depression following the death of her boyfriend. *Id*. at 445–46. She reported that she had completed ninth grade, but could not read or write and she had stopped working due to her boyfriend's illness. *Id*. at 383, 385. Doctors diagnosed her with major depressive disorder, single episode. *Id*. at 389. She was discharged one week later with a Global Assessment of Functioning ("GAF")[2] score of 55.

---

[2] The GAF scale measures a person's overall psychological, social, and occupational functioning. Am. Psych. Assn., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) ("DSM–IV–TR"). Selected GAF scores have the following meanings:

> 90–81 Absent or minimal symptoms (e.g., mild anxiety before an exam), good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns (e.g., an occasional argument with family members).
>
> 80–71 If symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork).
>
> 70–61 Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.
>
> 60–51 Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).
>
> 50–41 Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).

Goble received follow-up care from Physicians' Alliance for Mental Health. Several treatment records reflect that Goble had a normal mood and affect. *Id*. at 420, 455, 523. In December 2011, Goble denied receiving prior mental health treatment. *Id*. at 380. Providers diagnosed her with a single episode of major depressive disorder without psychotic features. *Id.* at 381. In an April 2012, evaluation, she reported improved focus and concentration with medications. *Id.* at 419. In June 2012, she reported poor concentration, and providers changed her medication. *Id*. at 545, 548. She continued to report problems with concentration and attention in December 2012 and again in July 2013. *Id*. at 513, 530.

Dr. Reuben Silver with the North Carolina Department of Health and Human Services performed a consultative examination in April 2012. He opined that Goble had borderline intelligence. *Id*. at 400. Dr. Christopher Myers of the Physician Alliance for Mental Health, which treated Goble since November 2011, provided a medical source statement in July 2013. *Id.* at 509–10. Dr. Myers opined that Goble had moderate limitations in the following areas: understanding and remembering detailed instructions; maintaining attention and concentration for extended periods; making simple, work-related decisions; and completing a normal workday or workweek without interruptions. *Id*. He suspected low intellectual functioning. *Id*. at 510. In a

---

40–31 Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).

30–21 Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e .g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends).

DSM–IV–TR 34.

November 2013, statement Dr. Myers noted that Goble's symptoms had improved although she continued to experience depression. *Id*. at 570.

An August 9, 2013 psychological examination determined that Goble had a full scale IQ score of 69, which the examiner, Michael Bradley, Ed.D., concluded was consistent with a diagnosis of mild mental retardation. *Id*. at 553, 557. The examiner also opined that Goble would have difficulty understanding, retaining, and following instructions and tolerating the stress of day-to-day work. *Id*. at 557.

Goble has reported to providers that she has been noncompliant with medication (*id*. at 376) or her CPAP machine (*id*. at 392).

**D. Listing 12.05C**

Goble first contends that ALJ Sweeda erred by failing to consider her impairments under Listing 12.05. The Commissioner maintains that the ALJ was not required to discuss this Listing because there is insufficient evidence to establish that Goble meets the Listing criteria. The court finds that ALJ Sweeda did not err by failing to discuss Listing 12.05C because there was insufficient evidence to demonstrate that Goble suffered from an intellectual disability and the ALJ appropriately determined that Goble did not satisfy the IQ requirement of 12.05C.

**1. Overview of Listing of Impairments**

The Listing of Impairments details impairments that are "severe enough to prevent an individual from doing any gainful activity." 20 C.F.R. § 416.925(a). If a claimant's impairments meet all the criteria of a particular listing, *id.* § 416.925(c)(3), or are medically equivalent to a listing, *id.* § 416.926, the claimant is considered disabled, *id.* § 416.920(d). "The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard [for disability more generally]. The listings define impairments that

would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *see also Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (stating that the listings are designed to weed out only those claimants "whose medical impairments are so severe that it is likely they would be disabled regardless of their vocational background").

The claimant has the burden of demonstrating that his or her impairments meet or medically equal a listed impairment. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981); *see also Hancock v. Astrue*, 667 F.3d 470, 476 (4th Cir. 2012). As a result, a claimant must present medical findings equal in severity to all the criteria for that listing: "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530–31; *see also* 20 C.F.R. § 416.925(c)(3). A diagnosis of a particular condition, by itself, is insufficient to establish that a claimant satisfies a listing's criteria. *Id.* § 416.925(d); *see also Mecimore v. Astrue*, No. 5:10–CV–64, 2010 WL 7281096, at *5 (W.D.N.C. Dec. 10, 2010) ("Diagnosis of a particular condition or recognition of certain symptoms do not establish disability.").

An ALJ is not required to explicitly identify and discuss every possible listing that may apply to a particular claimant. Instead, the ALJ must provide a coherent basis for his step three determination, particularly where the "medical record includes a fair amount of evidence" that a claimant's impairment meets a disability listing. *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). Where such evidence exists but is rejected without discussion, "insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." *Id*. (citing *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986)). In reviewing the ALJ's analysis, it is possible that even "[a] cursory explanation" at step three may prove

"satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion." *Meador v. Colvin*, No. 7:13–CV–214, 2015 WL 1477894, at *3 (W.D. Va. Mar. 27, 2015) (citing *Smith v. Astrue*, 457 F. App'x 326, 328 (4th Cir. 2011)). Nevertheless, the ALJ's decision must include "a sufficient discussion of the evidence and explanation of its reasoning such that meaningful judicial review is possible." *Id.*

**2. Overview of Listing 12.05**

ALJ Sweeda evaluated Goble's mental impairments under Listing 12.04, affective disorders, and concluded she did not meet the criteria of that Listing. Tr. at 77. However, Goble contends the ALJ should have also evaluated her under Listing 12.05, mental disorders. Listing 12.05 sets forth a two-part inquiry for determining intellectual disability: first, a claimant must satisfy the diagnostic description of the impairment, and second, a claimant must meet the required severity level, which may be accomplished by satisfying any one of four categories labeled A through D. Specifically, the Listing provides that:

> Intellectual disability refers to a significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> …
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpart P, App. 1, § 12.05.

Where, as here, the paragraph C severity criteria are at issue, the Fourth Circuit has described the presence of an intellectual disability as Prong 1 and the requirements of paragraph

C regarding IQ level and a significant work-related limitation as Prongs 2 and 3, respectively. *Hancock*, 667 F.3d at 473.

In this case, the dispute centers on whether the evidence satisfies Prongs 1 and 2.[3] Goble contends that it does, but the Commissioner disagrees. Specifically, the Commissioner contends that the evidence does not support a finding that Goble has deficits in adaptive functioning and that the ALJ properly rejected the results of an IQ test that supported Goble's claim. After consideration of the evidence with the record, the Court agrees with the Commissioner and determines that Goble cannot satisfy the criteria of Listing 12.05C.

**3. Prong 1 – Intellectual Disability**

The Prong 1 diagnostic criteria for an intellectual disability includes two components—deficits in adaptive functioning and an onset before age 22—that must both be satisfied in order for the Listing to apply. *Id.* at 475. Although the age-related component is generally self-explanatory, the adaptive functioning component requires some further discussion.

The American Psychiatric Association defines the "adaptive functioning deficits" at issue under Prong 1 as "limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." *Jackson v. Astrue*, 467 F. App'x 214, 218 (4th Cir. 2012) (citing *Atkins v. Virginia*, 536 U.S. 304, 309 n.3 (2002)); Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 41 (4th ed. 2000). Whether a claimant's alleged deficits

[3] Prong 3 requires the ALJ to find that a claimant has a "significant work-related limitation." *Hancock*, 667 F.3d at 473. Under Prong 3, the required physical or mental impairment "need not be disabling in and of itself." *Branham v. Heckler*, 775 F.2d 1271, 1273 (4th Cir. 1985). Therefore, this requirement is satisfied when the ALJ finds that a claimant has other severe impairments. *Luckey v. U.S. Dep't of Health & Human Servs.*, 890 F.2d 666, 669 (4th Cir. 1989). There appears to be no doubt that Goble satisfied Prong 3 given that she has severe impairments including obesity, hypertension, diabetes mellitus, depression, and sleep apnea. Tr. at 76.

satisfy prong one is a fact-specific inquiry and must be determined on a case-by-case basis. *Richardson v. Colvin*, No. 8:12-cv-03507, 2014 WL 793069, at *11 (D.S.C. Feb. 25, 2014) ("[W]hether a claimant manifested deficits in adaptive functioning during the developmental period is a fact-specific inquiry with few bright-line rules." (citation omitted)). Thus, although cases interpreting Listing 12.05 provide some guidance, the factors that will satisfy this prong are unique to each case.

Goble has not established that she has deficits in adaptive functioning so as to satisfy Prong 1. ALJ Sweeda's decision concluded that Goble was able to function at a greater level than she alleged. Tr. at 80. A finding that she had sufficient adaptive functioning is supported by the following evidence: she cared for her ill boyfriend as well as her aunt and multiple pets; she was independent in personal care, shopped for groceries, and could perform a full range of household chores, including cleaning and laundry; she visited with family and enjoyed puzzles; she attended church weekly and went to the movies; she has her driver's license; and she can pay bills, count change, and write checks. *Id.* at 79–83. This evidence counsels against a finding that Goble has the necessary deficits in adaptive functioning to satisfy Prong 1 of Listing 12.05C factors.

**4. Prong 2 – Validity of IQ Score**

Prong 2 of the 12.05C analysis requires a valid IQ score between 60 and 70 in the verbal, performance, or full-scale area. *Hancock*, 667 F.3d at 473. Goble's presented evidence of an IQ score of 69, which would place her within the range required under Listing, but ALJ Sweeda expressly discounted this result because it was inconsistent with other evidence in the record. Tr. at 82. Goble contends that the ALJ erred by failing to accord sufficient weight to the evidence she presented regarding her IQ score.

In this Circuit, "an ALJ has the discretion to assess the validity of an IQ test result and is not required to accept it even if it is the only such result in the record." *Hancock*, 667 F.3d at 474. ALJ Sweeda identified several reasons that he accorded little weight to the assessment which produced this IQ score. *Id*. First, he noted that the psychologist, Michael Bradley, Ed.D., opined that Goble would have difficulty understanding, retaining, and following instructions as well as difficulty tolerating the stress and pressures associated with day-to-day work activity, and trouble relating to others. *Id*. Next, he pointed out that despite her lack of formal education and contrary to Dr. Bradley's findings, Goble denied any interpersonal difficulties and that she was able to pay bills, count change, write checks, shop for groceries, and handle household finances. *Id*. Finally, he noted that she left her previous work to care for her ill boyfriend, not because of any mental or physical reasons. *Id*. Thus, despite her decreased cognitive function, ALJ Sweeda concluded that the record supported a finding that Goble retained an ability to work. *Id*.

ALJ Sweeda's consideration of Dr. Bradley's assessment is supported by Dr. Silver's examination which noted borderline intelligence. *Id*. at 83. "Borderline intelligence" reflects an IQ range from 71 to 84. *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, *Text Revision* 740 (4th ed. 2000); *Harley v. Colvin*, No. 5:14-cv-853-D, 2015 WL 9699531, at *6 (E.D.N.C. Dec. 2, 2015), *Mem & Rec. adopted*, 2016 WL 126372 (E.D.N.C. Jan. 11, 2016). Dr. Silver also opined that Goble's psychological issues would not preclude employment. Tr. at 83. His opinions were given significant weight. *Id*.

Further evidence supports discounting the IQ score by Dr. Bradley. Goble's high school records indicate an IQ score of 87. *Id*. at 330. Additionally, while work history does not conclusively establish adaptive functioning, it is a relevant factor in determining a claimant's

abilities or limitations. *Luckey*, 890 F.2d at 669. Goble maintained employment and did not stop working based on any mental or physical limitations. Tr. at 82.

Given the conflicting evidence in the record as to Goble's capabilities and limitations, coupled with the fact that an ALJ has discretion to assess the validity of an IQ score, the court cannot conclude that ALJ Sweeda erred in discounting Goble's evidence regarding her IQ score. Consequently, Goble has not demonstrated that she meets Prong 2 of Listing 12.05C. Therefore, her argument that she was entitled to a finding of disability based upon the listing is without merit.

**E. Moderate Limitations in Concentration, Persistence, and Pace**

Goble next argues that ALJ Sweeda failed to account for her moderate limitations in concentration, persistence, and pace when formulating the RFC. She contends that his limitation to simple, routine, repetitive tasks does not sufficiently capture her moderate limitations in this functional area. The Commissioner submits that ALJ Sweeda's RFC determination properly reflects for all of Goble's limitations.

In *Mascio v. Colvin,* decided after ALJ Sweeda's determination, the Fourth Circuit noted that it is reversible error for an ALJ to present RFC findings to a vocational expert in the form of a hypothetical if the ALJ "fail[s] to account for a relevant factor when determining [the plaintiff's RFC]." 780 F.3d 632, 638 (4th Cir. 2015). The Fourth Circuit "agree[d] with other circuits that an ALJ does not account for a claimant's limitation in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work" because "the ability to perform simple tasks differs from the ability to stay on task." *Id.* (quotation omitted). In so holding, the Fourth Circuit emphasized that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Because the

ALJ failed to explain why the plaintiff's "moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in [plaintiff's] residual functional capacity," the Fourth Circuit remanded the *Mascio* case. *Id.*

Here, the RFC limited Goble to "simple, repetitive, routine tasks with no direct customer service and not requiring good reading or writing skills." Tr. at 78. Presumably, ALJ Sweeda found that such mental limitations did not impact Goble's ability to perform her past work given that she left her job as an industrial cleaner to care for her boyfriend, not because she could not meet the mental demands of that job. *Id.* at 82. This suggests that she successfully performed the duties of that job despite any mental limitations. Nonetheless, the question before the court is whether the limitations set forth in the RFC reflect her moderate limitation in concentration, persistence, or pace found at step three in light of *Mascio*.

The court finds that *Mascio* requires remand in such circumstances. The Commissioner employs VEs to offer evidence as to whether a claimant possesses the RFC to meet the demands of past relevant work or adjust to other existing work. 20 C.F.R. §§ 404.1560(b)–(c), 416 .960(b)–(c) (2011). As noted above, an RFC for simple, routine tasks or unskilled work fails to adequately account for moderate limitations in concentration, persistence, or pace. *Mascio*, 780 F.3d at 638. In questioning the VE about Goble's ability to perform her past work, then, ALJ Sweeda set forth an incomplete description of Goble's limitations. Thus, the VE's testimony that Goble's past work as an industrial cleaner was compatible with her RFC was not reliable. *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) ("In order for a [VE]'s opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of [a] claimant's impairments.") (quoting *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)).

Although the ALJ's findings at step three may not require any additional limitations for concentration, persistence, or pace in the RFC, the ALJ must at least provide a sufficient explanation in the decision to allow the court to conduct meaningful review of the RFC determination. *See Scruggs v. Colvin*, No. 3:14-cv-00488, 2015 WL 2250890, at *5 (W.D.N.C. May 13, 2015); *Reinhardt v. Colvin*, No. 3:14–cv–00488–MOC, 2015 WL 1756480, at *3 (W.D.N.C. Apr. 17, 2015). Here, ALJ Sweeda's decision does not explain how he accounted for the moderate limitations in concentration, persistence, or pace when formulating Goble's RFC. His step-three discussion determining whether her impairments meet a Listing does not sufficiently address the limitations in concentration, persistence, or pace as they relate to the RFC as required by *Mascio.*

Because the RFC determination failed to account for Goble's moderate limitations in concentration, persistence, or pace, the VE's testimony that Goble could perform the demands of her past work is not fully informed of all her limitations. *See Lee v. Astrue*, No. 1:10-CV-00310, 2011 WL 3163238, at *6–7 (N.D. Ind. July 26, 2011) (holding that the ALJ's RFC finding that claimant could perform unskilled work did not properly incorporate her moderate limitation in concentration, persistence, or pace; thus, VE's testimony that claimant could perform her past work was based on an incomplete picture of her actual limitations and required remand); *Gruber v. Astrue*, No. 1:10-cv-172, 2011 WL 1253888, at *2–3 (D. Me. Mar. 30, 2011) (holding that, despite ALJ's step four finding that claimant could perform past work, it was reversible error where the RFC determination did not include his moderate limitations in concentration, persistence, or pace found at step two). Accordingly, it is appropriate to remand this matter to allow the ALJ to explain how the RFC determination reflects Goble's limitations in

concentration, persistence, or pace or whether the ALJ has determined that the moderate limitations in concentration, persistence, and pace had no impact on her ability to work.

### F. Prior Work

Finally, Goble contends that ALJ Sweeda erred in finding that she was capable of performing her previous work. Specifically, Goble argues that her RFC for medium work conflicted with the VE's testimony that her past work may involve pushing a "heavy" cart. The Commissioner maintains, and the court agrees, that Goble's prior work is compatible with her RFC for medium exertion work.

At the hearing, the VE testified that Goble's prior work would be categorized as industrial cleaner (DOT: 381.687-018) and that someone with her RFC could perform the tasks associated with that job. Tr. at 103. The VE went on to distinguish between an industrial cleaner and a housekeeper/maid (DOT: 323.687-014), as Goble characterized her previous work. The VE stated that both positions can be performed in a hotel or motel. *Id*. at 105. The VE stated that in a hotel situation, generally a worker will have a cart to push and that although "the cart is heavier, the actual vocational activity that is performed at the light level of exertion." *Id*. at 106.[4]

While the VE's testimony is a bit imprecise, it is nonetheless clear that the use of a cart to perform either the housekeeping/maid or industrial cleaner work does not convert those light and medium positions to the heavy exertional level. Although the VE described the cart, which may or may not be used, as heavy, his unequivocal testimony was that the exertional level is not heavy. *Id*. Further, Goble did not state that her past work, as it was actually performed, involved

[4] Although the VE stated that use of a cart is associated with light level, it appears that he meant medium level. Given that an RFC for medium work would include an ability to perform jobs at a lesser exertional level, Goble would presumably be able to perform the work of housekeeper/maid if the only distinction between these two jobs is, as the VE testified, the use of a cart. 20 C.F.R. § 404.1576(c).

the use of a cart—rather, she stated she carried her supplies from room to room. Tr. at 273. She also stated that her previous work only involved lifting up to 10 pounds. *Id*. Such statements suggest her previous work could be performed at a light exertional level.

Goble also argues that the VE failed to identify the number of available jobs for her prior work. However, as the Commissioner points out, identifying the availability of jobs is not required at step four. In fact, the Regulations specifically state that "[i]f we find that you have the residual functional capacity to do your past relevant work, we will determine that you can still do your past work and are not disabled. We will not consider your vocational factors of age, education, and work experience *or whether your past relevant work exists in significant numbers in the national economy."* 20 C.F.R. §§ 404.1560(b)(3), 416.960(b)(3) (emphasis added). Accordingly, this argument lacks merit.

The court declines Goble's invitation to read the VE's testimony as inconsistent. As there is no conflict between her RFC, as determined by ALJ Sweeda, and her previous work, as categorized by the VE, the court finds no error at step four. Therefore, Goble's argument on this issue lacks merit.

**III. Conclusion**

For the forgoing reasons, the court grants Goble's Motion for Judgment on the Pleadings (D.E. 25), denies Colvin's Motion for Judgment on the Pleadings (D.E. 29), and remands the matter to the Commissioner for further consideration.

Dated: June 8, 2016

Robert T. Numbers, II

ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE